10884
06578

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GAO AND COURT OF FEDERAL CLAIMS PROTECTIVE ORDERS

| | |
|---|---|
| DISMAS CHARITIES, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>) |

**Filed Under Seal**
No. 06-825 C
BID PROTEST

FILED
DEC - 5 2006
U.S. COURT OF FEDERAL CLAIMS

**PLAINTIFF DISMAS CHARITIES, INC.'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AGAINST UNLAWFUL AWARD OF CONTRACT**

Dismas Charities, Inc. ("Dismas"), by its undersigned counsel, files this complaint for declaratory and injunctive relief and alleges as follows:

**NATURE OF THE CASE**

1. Plaintiff Dismas brings this post-award procurement protest action to challenge the Department of Justice, Federal Bureau of Prisons' ("BOP") decision to award Contract No. DJB200811 ("the Contract") to Bannum, Inc. ("Bannum") under Request for Proposals No. 200-0861-SC ("Solicitation" or "RFP"). The procurement is for Community Sanctions Center ("CSC") services for Federal offenders held under the authority of United States statutes in Austin, Texas, and the Contract is valued at up to $5.6 million over five years (a two-year base period and three one-year option periods). BOP awarded the Contract using a negotiated procurement format subject to 48 C.F.R. part 15 and the Solicitation required BOP to make award to the offeror that provided the "best value" to BOP.

2. BOP violated law and regulation in basing its award decision on flawed technical and past performance evaluations, which failed to recognize that Bannum failed to timely meet

mandatory evaluation criteria under the Technical/Management evaluation factor, and which did not consider important past performance information that was simply "too close at hand" to ignore.

3. In addition, as an independent ground for overturning the award, BOP improperly based its award decision on a purported tradeoff analysis that was arbitrary, capricious, and contrary to law because it failed to make the comparative assessment required by the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 15.308. Such an assessment would have shown that Dismas's higher technically rated and only slightly more expensive proposal represents the best value in this procurement, which was heavily weighted in favor of the technical and past performance evaluation factors rather than price. By failing to perform a proper tradeoff analysis, or even to recognize the different weightings that the RFP assigned to the technical and the past performance evaluation factors, the agency deviated from the source selection criteria and effectively converted the procurement from a best value/tradeoff procurement into one for the lowest-cost, technically-acceptable, proposal. Furthermore, the agency's purported tradeoff analysis could not have been rational, as the purported analysis did not even take into account Bannum's failure to meet not one, but two mandatory minimum requirements of the Solicitation. Stated differently, BOP changed the ground rules at the last minute to take advantage of perceived cost savings available from an offeror that was technically "acceptable."

## JURISDICTION

4. This Court has jurisdiction over this matter under the Tucker Act, 28 U.S.C. § 1491(b)(1).

5. The remedies that Dismas seeks are authorized by the Tucker Act, 28 U.S.C. § 1491(b)(2), and by the Declaratory Judgment Act, 28 U.S.C. §§ 2201 – 2202.

## PARTIES

6. Plaintiff Dismas is a not-for-profit 501(c)(3) corporation based in Louisville, Kentucky with over three decades of expertise in operating community-based, correctional programs around the country. Dismas has provided community-based, correctional programs for over 41 years. Its services are rendered to local, state, and federal offenders. As one of the nation's largest not-for-profit social services agencies specializing in community corrections, Dismas currently operates community corrections or comprehensive sanctions centers in ten states. In these centers, Dismas manages 25 Federal, state, and local contracts. Dismas is an actual offeror whose direct economic interest has been adversely affected by BOP's decision to make award to Bannum. But for the errors that BOP made in the evaluation of the proposals, Dismas, which received the highest possible color/adjectival ratings for the two most important evaluation factors, would have been awarded the contract.

7. Defendant is the United States of America, acting by and through BOP, which is the procuring agency. BOP's Contracting Officer ("CO") is Ms. Rebecca Canfield, whose address is U.S. Department of Justice, Federal Bureau of Prisons, Acquisition Branch, 320 First Street, N.W. (5006), Washington, D.C. 20534.

## STATEMENT OF FACTS

### A. The Solicitation

8. The Solicitation, as noted above, is for BOP's procurement of CSC services for Federal offenders held in Austin, Texas under the authority of United States statutes. The Solicitation indicated that BOP would award a single Indefinite Delivery/Requirements-type contract with firm-fixed unit-prices ("inmate day rates") for a two-year base period and three one-year options to the responsible offeror whose proposal represented the best value to the Government after evaluation in accordance with the evaluation factors and subfactors in the

Solicitation. The resulting contract was to be for 55 beds during the base period, increasing to 58 beds in the final option year. The Solicitation required offerors to submit a Technical/Management Proposal, a Business Proposal, and Past Performance information. RFP § L.5. The due date for initial proposal submissions was July 14, 2005. RFP, Amend. 0001, at 2.

9. According to the Solicitation, if discussions were required in the course of the procurement, each offeror had to "provide the Contracting Officer with valid proof of all zoning and local ordinance requirements necessary for the operation of" the offeror's proposed facilities used to perform the work. RFP § L.6.(i). Each offeror was to provide such proof to the Contracting Officer "**within sixty days after the date of the initial proposal submission**." *Id.* (emphasis in the original).

10. The Past Performance information was to "address all elements contained in the CCC/CSC/MINT Compliance Matrix" ("Matrix") in the Solicitation's Section J. RFP § L.8. The Matrix required the offeror to submit "[t]he 5 most relevant contract and/or subcontracts that were, or are currently being, performed in the past 3 years." RFP Matrix, Accountability Factor, Proposal Preparation Instructions at 1. The Matrix also required that the offeror "submit information on problems encountered on the contracts and/or subcontracts identified and the corrective actions taken to resolve the issues." *Id.* at Note.

11. The Solicitation stated that BOP would award to the offeror whose proposal the Government determined to be in the Government's best interests, "price and other factors considered." RFP § M.2. The Solicitation identified the "other factors" as:

> (A) The offeror's compliance with those minimum standards prerequisite to an affirmative determination of responsibility as defined by Section 9.104-1 of the Federal Acquisition Regulation.

> (B) The offeror's compliance with **minimum or mandatory technical/management requirements** to the extent specified in the Terms and Conditions and/or specifications contained in this solicitation.
>
> (C) All factors at M.5 below, upon which a comparative rating of proposals will be based, in accordance with the relative order of importance accorded each respectively.

RFP § M.2. (emphasis added).

12. Section M.5. of the Solicitation identified three Evaluation Criteria, in order of importance: (1) Past Performance; (2) Technical/Management; and (3) Price. RFP § M.5. The Solicitation stated that the Technical/Management and Past Performance evaluation criteria, when combined, were "significantly more important that Price." *Id.*

13. The Solicitation stated that a Source Selection Evaluation Board ("SSEB") would analyze each Technical/Management Proposal, rating each element and "giving the highest rating to the best overall approach." RFP § M.3. The Solicitation listed five evaluation factors for the Technical/Management area: (1) Site Location, composed of two subfactors, Site Validity and Suitability, and Community Outreach Program; (2) Accountability; (3) Programs; (4) Facility; and (5) Personnel. RFP § M.5., 2.0. The Solicitation stated: "**Site Location is the most important Technical/Management factor**." *Id.* (emphasis added).

14. The Solicitation stated that the Past Performance evaluation would be "accomplished by reviewing aspects of an offeror's relevant present and recent past performance, focusing on and targeting performance that is relevant to the Past Performance factors" outlined in the Solicitation. RFP § M.5., 1.0.

15. As for price, the Solicitation stated that the Government would not "specifically score or rate the offeror's price." RFP § M.5., 3.0. The Solicitation stated that the offeror's

evaluated price would be "assessed against the evaluation results of the Non-Price areas in conducting possible tradeoff analysis and determining the best value to the Government." *Id.*

16. The Solicitation stated that the Government would also conduct a proposal risk assessment. RFP § M.5., Risk Assessment Area. Separate proposal risk assessments and ratings could be applied to all of the evaluation criteria, except for the "Site Validity and Suitability" subfactor under the Technical/Management Evaluation Area. *Id.* For that subfactor, the Solicitation stated that "the level of risk associated with the offeror's proposal is inherent in the subfactor definition and will thus be reflected in the subfactor color/adjectival rating and rationale." *Id.*

17. The evaluation's color/adjectival ratings were defined in the Solicitation as follows:

> BLUE – Very Good: Offeror's proposal meets and exceeds the requirements of the solicitation. Their proposal shows they have a very good solution for meeting the needs and objectives of the program. One or more significant strengths exist. Weaknesses may exist, but none are considered significant and are easily correctible.
>
> GREEN – Acceptable: Offeror's proposal **meets the solicitations minimum requirements** of the solicitation [sic]. Their proposal shows they have an acceptable solution for meeting the needs and objectives of the program. Strengths and weaknesses may exist. The weaknesses are correctable.
>
> YELLOW – Poor: Offeror's proposal does not meet some of the requirements of the solicitation. Their proposal shows they have a poor solution for meeting the needs and objectives of the program. Weaknesses outweigh any strengths that may exist. The weaknesses are difficult to correct.
>
> RED – Unacceptable: Offeror's proposal fails to meet the requirements of the solicitation. Their proposal shows they have an unacceptable solution for meeting the needs and objectives of the program. There are numerous weaknesses. The weaknesses will be very difficult to correct or are not correctable.

RFP § M.5. (emphasis added).

**B. BOP's Evaluation and Award Determination**

18. BOP received three proposals by the closing date. Source Selection Decision ("SSD") at 1. Dismas's timely submitted proposal to BOP addressed each of the evaluation factors and subfactors in detail, and provided BOP with all of the information requested in the Solicitation, without taking exception to any of the Solicitation's terms, conditions, or requirements.

19. BOP evaluated the proposals and found all three to be in the competitive range. *Id.* BOP conducted two rounds of discussions, after which each offeror submitted its final proposal revision. On February 6, 2006, Sheila Makle, the Source Selection Official ("SSO"), decided to make contract award to Bannum. SSD at 14. On March 28, 2006, BOP announced that it had awarded the Contract to Bannum. On that same date, Rebecca Canfield, the Contracting Officer, signed the Contract on behalf of the Government. Award Documentation, page 1. Contract performance was to begin on September 1, 2006. *Id.*

20. According to BOP's Debriefing Letter, final proposed inmate day rates for Dismas and Bannum for CSC services were as follows:

| | Base Period | Option Year 1 | Option Year 2 | Option Year 3 |
|---|---|---|---|---|
| **Dismas** | $59.68 | $62.08 | $63.92 | $65.85 |
| **Bannum** | $59.00 | $52.00 | $53.00 | $54.00 |

21. According to the SSD, the Government's independent government estimate ("IGE") for the Contract was $6,408,320.00. SSD at 1. All three offerors submitted final proposal revisions with overall total amounts lower than the IGE. *Id.* Dismas's overall total amount was $6,392,461.00, while Bannum's overall total amount was $5,680,820.00. *Id.* BOP's overall evaluation and risk level ratings for Dismas and Bannum were as follows for each of the evaluation factors and subfactors:

| | DISMAS | BANNUM |
|---|---|---|
| PAST PERFORMANCE | BLUE | BLUE |
| TECHNICAL/MANAGEMENT | BLUE/VERY GOOD | GREEN/ACCEPTABLE |
| Site Location<br>*Site Validity and Suitability*<br>*Community Relations Program* | Blue/Very Good<br>*Green/Acceptable*<br>*Blue/Very Good* | Green/Acceptable<br>*Green/Acceptable*<br>*Blue/Very Good* |
| Accountability | Blue/Very Good | Green/Acceptable |
| Programs | Green/Acceptable | Green/Acceptable |
| Facility | Green/Acceptable | Green/Acceptable |
| Personnel | Blue/Very Good | Green/Acceptable |
| TECHNICAL/MANAGEMENT FINAL SCORE | BLUE/VERY GOOD LOW RISK | GREEN/ACCEPTABLE LOW RISK |

SSD at 8-13.

22. As noted above, under the Site Validity and Suitability evaluation subfactor, Bannum received a GREEN color/adjectival rating. *Id.* at 9. For this subfactor, the SSD noted one weakness, "inadequate parking for staff/inmates, specifically, six spaces are not enough. **Other than the parking issue, they met the minimum requirements** of the solicitation in this subfactor." *Id.* (emphasis added). The Pre-Site Facility Inspection of Bannum and the SSEB Technical Evaluation also state that Bannum failed to meet this minimum requirement. Pre-Site Facility Inspection of Bannum ("parking is not adequate for both the staff and residents, there are 6 parking slots and 2 of these slots are going to have to be converted to handicap parking."); SSEB Technical Evaluation ("As noted during the pre-site inspection, there was inadequate parking for staff/inmates, specifically, six spaces are not enough. Other than the parking issue, [Bannum] met the minimum requirements of the solicitation in this subfactor.").

23. Notwithstanding Bannum's failure to meet the minimum requirements of the Solicitation, the SSD concluded by stating: "Bannum's proposal met the requirements of the SOW" in Past Performance and Technical/Management. SSD at 13-14. Based on this conclusion, while pointing out that Dismas's "Technical/Management proposal was rated higher than the other offerors," the SSO maintained simply that Bannum's "price is fair and

reasonable," and stated that the "proposal submitted by Bannum is the best value to the government." *Id.* at 14; *see also* Debriefing Letter at 2, 3 (noting that "Bannum received a high rating in past performance, was technically acceptable and offered a lower price," and "no tradeoffs used in determining the award of the contract").[1]

**C. Dismas's Bid Protest at the Government Accountability Office**

24. On June 5, 2006, Dismas timely filed a bid protest at the Government Accountability Office ("GAO") challenging the award to Bannum and requesting that BOP stay the contract award pursuant to the automatic stay provision of the Competition in Contracting Act. GAO thereafter notified BOP of the protest and triggered the automatic stay.

25. In its GAO protest (B-298390), Dismas challenged BOP's failure to follow the evaluation criteria in evaluating proposals under the Technical/Management and Past Performance Evaluation Areas and BOP's failure to make award based on the best value.

26. On August 21, 2006, GAO denied Dismas's protest on the ground that the evaluation and award decision were reasonable and consistent with the Solicitation's evaluation terms. This action follows.

**D. Bannum Never Had and Still Lacks the Required Facility**

27. Although contract performance was to have begun on September 1, 2006, and the GAO protest was decided prior to that date, Bannum has not yet begun contract performance. Upon information and belief, Bannum's failure to begin contract performance stems directly from its failure to meet the mandatory minimum requirements of the Solicitation relating to

---

[1] In its Debriefing Letter, BOP failed to provide Dismas with the minimum information required by 48 C.F.R. § 15.506(d). For example, while BOP stated three proposals were submitted, it did not include an "overall ranking of all offerors . . .," nor did it include any information about the third offeror. 48 C.F.R. § 15.506(d)(3). Furthermore, BOP failed to provide the overall evaluated cost or price for Dismas and Bannum. *See* 48 C.F.R. § 15.506(d)(2).

parking and zoning, and its failure to actually purchase a site, rather than merely lease a site. Upon information and belief, Bannum has not, even to this date, been able to secure a site, has been issued a Cure notice by BOP, and has been allowed by BOP until February 2007 to secure a site. None of this would have occurred had BOP properly evaluated the proposals, especially in the area of risk assessment, which BOP itself stated was to be evaluated as an inherent part of the Site Validity and Suitability evaluation subfactor.

**COUNT I**
**(Bannum Did Not Meet the Minimum Requirements of the Solicitation)**

28. Plaintiff Dismas incorporates by reference all preceding paragraphs.

29. The Solicitation emphasized that, in the event of discussions, all offerors were required to provide BOP with valid proof of having met "all zoning and local ordinance requirements necessary for the operation of Community Corrections Center, Comprehensive Sanctions Center, or any other program as specified in the Statement of Work applicable to any and all proposed performance sites, **within sixty days after the date of the initial proposal submission**." RFP § L.6.(i) (emphasis in the original).

30. The "Certificate of Occupancy" proffered by Bannum as the documentation required by the Solicitation as valid proof of all zoning and local ordinance requirements did not, under the Austin City Code, fulfill Bannum's zoning requirement to have a Conditional Use permit to operate its proposed facility.

31. The Solicitation required offerors to provide proposals for "residential Comprehensive Sanctions Center Services (CSC)." RFP, Cover Letter at ¶ 1. According to the Austin City Code, this use clearly qualifies as a transitional housing use:

> TRANSITIONAL HOUSING use is the use of a site for the supervision or detention of more than 15 residents who are making the transition from institutional to community living. This use

> includes pre-parole detention facilities and halfway houses for juvenile delinquents and adult offenders, and overnight shelters for the homeless.

Austin City Code § 25-2-6 (45). In order to comply with Austin's zoning and local ordinances, transitional housing in a commercially zoned area in Austin cannot operate without a Conditional Use permit. *See* Austin City Code Section 25-2-491 and Zoning Use Summary Table at page 3. Bannum did not receive the required Conditional Use permit for its proposed facility until April 18, 2006, nearly one year after the due date for initial proposal submission (July 14, 2005). *See* City of Austin Review Case Summary for 1109 E. 52nd St.[2]

32. At the time of proposal submission, and even through contract award and the GAO protest, Bannum did not own the facility it promised to BOP. Upon information and belief, Bannum never owned the facility it promised, and neither owns nor leases any suitable facility as of this date, long after contract performance was to have begun.

33. The Solicitation also required the offeror's facility to provide a number of parking spaces sufficient to meet the needs of the projected staff and inmate population.

34. BOP admitted in the SSEB Technical Evaluation and in the SSD that Bannum had not met the minimum requirements of the Solicitation concerning parking spaces. In the SSD, BOP stated that, due to inadequate parking, Bannum's proposal did not meet the "minimum requirements of the solicitation" in the Site Validity and Suitability evaluation subfactor. SSD at 9 ("*Other than the parking issue*, they met the minimum requirements of the solicitation in this subfactor) (emphasis added); *see also* Pre-Site Facility Inspection of Bannum ("parking is not adequate for both the staff and residents, there are 6 parking slots and 2 of these slots are going to have to be converted to handicap parking."); SSEB Technical Evaluation ("As noted during

---

[2] Notably, Bannum's application for a Conditional Use permit requests the permit for a facility of only 40 beds. The Solicitation required a minimum of 55 beds in the base period.

the pre-site inspection, there was inadequate parking for staff/inmates, specifically, six spaces are not enough. Other than the parking issue, [Bannum] met the minimum requirements of the solicitation in this subfactor.").

35. According to the Solicitation, a GREEN rating indicates that the offeror's proposal met the Solicitation's minimum requirements. RFP § M.5. A YELLOW rating indicates that the offeror's proposal did not meet some of the requirements of the Solicitation. *Id.* A RED rating indicates that the offeror's proposal failed to meet the requirements of the Solicitation. *Id.* Based on its failure to meet even one (parking spaces), much less two (parking spaces and valid proof of zoning) minimum material requirements of the Solicitation, BOP should have eliminated Bannum from the competition. At the very least, BOP should have significantly downgraded Bannum's rating under the Technical/Management factor. In this regard, BOP's Solicitation emphasized that "Site Location is the most important Technical/Management [evaluation] factor." RFP § M.5., 2.0.

36. In addition, the Site Validity and Suitability evaluation subfactor under the Site Location evaluation factor was the one area where BOP itself recognized that "the level of risk . . . is inherent in the subfactor definition and will thus be reflected in the subfactor color/adjectival rating." RFP M.5. In not reflecting Bannum's failure to meet not one, but two mandatory minimum evaluation criteria under this one subfactor but still assigning Bannum a GREEN (rather than the proper YELLOW or RED) rating, BOP did not follow the evaluation criteria in recognizing the risk inherent in this subfactor.

37. Dismas was prejudiced by BOP's improper evaluation of Bannum under the Technical/Management factor. Had BOP eliminated Bannum's proposal from the competition, Dismas would have received the award of the Contract as the next-lowest priced offeror with the

highest overall rated proposal. At the very least, had BOP properly rated Bannum's proposal consistent with the evaluation (but not eliminated Bannum from the competition), the proper scoring would have increased the disparity between Dismas's superior proposal and Bannum's proposal.

38. Plaintiff Dismas has suffered injury and will continue to suffer injury because of BOP's failure to conduct a proper technical evaluation. Dismas has no adequate remedy at law for this injury (or for the injuries described below).

**COUNT II**
**(BOP Personnel Ignored Information That Was "Too Close At Hand")**

39. Plaintiff Dismas incorporates by reference all preceding paragraphs.

40. Individual BOP employees involved in this Solicitation were involved in administering recent and relevant contracts with Bannum where Bannum compiled demonstrably negative performance records, thus satisfying the criteria of the "too close at hand" doctrine.

41. Rebecca Canfield, the Contracting Officer for this procurement and one of the signatories to the Agency Report's Memorandum of Law in the GAO protest, was also the Contracting Officer for one of the procurements involved in *Bannum, Inc. v. United States*, 69 Fed. Cl. 311, 316 (2006) ("[T]he administrative record contains the justifications for the CEF scores that the BOP gave to [Bannum], including a failure to alert the BOP of an escaped prisoner in a timely manner.") (discussing past performance from Hattiesburg, Mississippi procurement that Dismas won); *see also* Award Notice for Hattiesburg, Mississippi Contract (noting Rebecca Canfield as the contact for the award). Through her involvement in that procurement, she had knowledge of Bannum's negative past performance on those contracts.

42. Based on Bannum's past performance on BOP contracts similar in scope and size to the procurement at issue here, known to the Contracting Officer for this procurement, Bannum should have received, at best, a GREEN rating in the Past Performance evaluation area (rather than the BLUE rating it received). The negative information regarding Bannum's past performance on prior contracts with BOP was "simply too close at hand" for a specific agency employee, the Contracting Officer, to ignore in BOP's evaluation in this procurement.

43. Dismas was prejudiced by BOP's failure to properly evaluate Bannum's proposal under the Past Performance factor. But for BOP's improper evaluation, Dismas had a substantial chance of being awarded the Contract.

44. Plaintiff Dismas has suffered injury and will continue to suffer injury because of BOP's failure to conduct a proper past performance evaluation. Dismas has no adequate remedy at law for this injury (or for the injury described below).

**COUNT III**
**(Unreasonable Source Selection Decision;**
**Violation of 41 U.S.C. § 253b(a) and 48 C.F.R. § 15.308)**

45. Plaintiff Dismas incorporates by reference all preceding paragraphs.

46. Contrary to 48 C.F.R. § 15.308 and the source selection criteria set forth in the RFP, BOP failed to conduct an adequate price/technical tradeoff "best value" analysis. By failing to do so, BOP effectively converted this best value, tradeoff procurement – heavily weighted in favor of, first, technical excellence; second, past performance; and only then price – into a technically-acceptable, lowest-cost procurement.

47. In this procurement, BOP clearly acted improperly by concluding that Bannum should be awarded the Contract. Dismas received the highest ranking in the two most important evaluation areas. While the SSD states that "the proposal submitted by Bannum is the best value

to the government" (SSD at 14), BOP admitted in the Debriefing Letter and again in its Agency Report Memorandum of Law at GAO that it did not use any tradeoffs in awarding the Contract to Bannum.

48. BOP's own words show that BOP improperly turned this "best value" procurement into a lowest-cost technically-acceptable procurement. For example, the SSD stated that "Bannum's proposal met the requirements of the SOW in Past Performance, Technical/Management, and their price is fair and reasonable." SSD, page 14. The Solicitation, however, required BOP to accord greater weight to the Technical/Management and Past Performance factors. As noted above, there was a clear distinction between the ratings of Dismas's and Bannum's proposals under the Technical/Management factor. Dismas not only received a higher rating for the overall factor, but received higher ratings under three of the five Technical/Management subfactors. The SSO brushed these distinctions aside in awarding the Contract to Bannum without even conducting a tradeoff analysis.

49. In addition, BOP's SSO conducted a flawed best value determination and failed to exercise the independent judgment required by 48 C.F.R. § 15.308 and Section M.2. of the Solicitation by, among other actions, awarding the Contract to an offeror that failed to meet all minimum requirements of the Solicitation. In this regard, the SSO's award determination was not rational, because the SSD includes contradictory statements regarding whether Bannum actually met the minimum requirements of the Solicitation in regards to parking spaces, and completely ignores Bannum's failure to provide the required Conditional Use permit. In the Conclusion of the SSD, the SSO states that "[a]lthough Dismas' Technical/Management proposal was rated higher than the other offerors, they all met the minimum requirements of the SOW." SSD at 13. Yet, earlier in the same SSD, the SSO concluded that Bannum's proposal

*did not meet* at least one minimum requirement of the Solicitation. *See* SSD at 9; *see also* SSEB Technical Evaluation at 2 ("as noted during the pre-site inspection, there was inadequate parking for staff/inmates, specifically, six spaces are not enough. Other than the parking issue, [Bannum] met the minimum requirements of the solicitation in this subfactor."). In the SSO's own words, therefore, Bannum's proposal did not meet the Solicitation's minimum requirement for parking spaces – a minimum requirement in a subfactor under the Solicitation's most important evaluation factor, Site Location. BOP did not even mention Bannum's failure to proffer the Conditional Use permit, a mandatory minimum requirement of the Solicitation in one of the Solicitation's most critical areas.

50. BOP's failure to conduct a price/technical tradeoff and its failure to make a rational award determination prejudiced Dismas. Had BOP properly conducted its price/technical tradeoff or, at the very least, conducted a rational analysis of whether Bannum met the minimum requirements of the Solicitation, Dismas would likely have received award of the Contract.

51. Plaintiff Dismas has suffered injury and will continue to suffer injury because of BOP's failure to conduct a proper price/technical tradeoff analysis. Dismas has no adequate remedy at law for this injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dismas requests that this Court:

1. Enter a *declaratory judgment* holding that BOP's award of the Contract to Bannum is arbitrary, capricious, and otherwise not in accordance with law, and setting it aside;

2. Issue a *preliminary injunction* prohibiting BOP from permitting Bannum to proceed with contract performance pending the entry of a final judgment in this procurement protest action;

3. Award Dismas its bid preparation and proposal costs;

4. Award Dismas its costs of pursuing this case, including reasonable attorneys' fees and expenses; and

5. Grant Dismas such other or further relief that the Court deems just and proper in the circumstances.

Dated: December 4, 2006

Respectfully submitted,

Alex D. Tomaszczuk by Chet J. [signature]

Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7940
Fax: (703) 770-7901

*Counsel of Record for Plaintiff*
*Dismas Charities, Inc.*

*Of Counsel:*

Daniel S. Herzfeld
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900