**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on January 3, 2007)

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC
January 11, 2007

DISMAS CHARITIES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

BANNUM, INC.,

Defendant-Intervenor.

No. 06-825C
Judge Margolis

BID PROTEST

**DISMAS CHARITIES, INC.'S RESPONSE TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S MOTIONS TO DISMISS FOR LACK OF STANDING**

Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7940
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Dismas Charities, Inc.*

*Of Counsel:*

Daniel S. Herzfeld
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900

Dated: January 3, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... ii

NATURE OF THE CASE .................... 1

QUESTION PRESENTED .................... 2

STATEMENT OF THE FACTS .................... 2

A. The Solicitation .................... 2

B. BOP's Evaluation and Award Determination .................... 3

C. Dismas's Bid Protest at the Government Accountability Office .................... 5

ARGUMENT .................... 6

I. DISMAS'S PROPOSAL COMPLIED WITH THE SOLICITATION'S REQUIREMENTS AS BOP ACKNOWLEDGED ON THREE SEPARATE OCCASIONS .................... 6

II. DISMAS IS AN INTERESTED PARTY .... .................... 10

III. GAO DECLINED TO DISMISS THE BID PROTEST FOR LACK OF STANDING .................... 10

CONCLUSION AND RELIEF REQUESTED .................... 12

# TABLE OF AUTHORITIES

Cases

*American Fed'n of Gov't Employees, AFL-CIO v. United States*,
258 F.3d 1294 (Fed. Cir. 2001) .......... 11
*Arch Chems., Inc. v. United States*,
64 Fed. Cl. 380 (2005) .......... 9
*Comprehensive Health Services, Inc. v. United States*,
70 Fed. Cl. 700 (2006) .......... 10
*Fort Carson Support Services v. United States*,
71 Fed. Cl. 571 (2006) .......... 9, 10
*Galen Med. Associates, Inc. v. United States*,
56 Fed. Cl. 104 (2003), *aff'd*, 369 F.3d 1324 (2004) .......... 7
*Gose v. United States Postal Serv.*,
451 F.3d 831 (Fed. Cir. 2006) .......... 9
*Julius Goldman's Egg City v. United States*,
697 F.2d 1051 (Fed. Cir. 1983) .......... 9
*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 10
*Rex Serv. Corp. v. United States*,
448 F.3d 1305 (Fed. Cir. 2006) .......... 10

Comptroller General Decisions

*Marylou's Transp. Serv.*,
B-261695, Sep. 28, 1995, 95-2 CPD ¶ 154 .......... 7, 8

Statutes and Regulations

28 U.S.C. § 1491(b) .......... 1, 2, 11
31 U.S.C. § 3551(2) .......... 11
41 U.S.C. § 253b(e)(2)(A) .......... 8
4 C.F.R. § 21.0(a)(1) .......... 11
4 C.F.R. § 21.1(a) .......... 11
4 C.F.R. § 21.1(i) .......... 11
48 C.F.R. § 15.001 .......... 8
48 C.F.R. § 15.308 .......... 8
48 C.F.R. § 15.503(b)(1)(v) .......... 8
48 C.F.R. § 15.506 .......... 5
48 C.F.R. § 15.506(d)(1) .......... 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on January 3, 2007)

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC
January 11, 2007

| | |
|---|---|
| DISMAS CHARITIES, INC., Plaintiff, | |
| v. | |
| THE UNITED STATES, Defendant, | No. 06-825C<br>Judge Margolis |
| and | |
| BANNUM, INC., Defendant-Intervenor. | BID PROTEST |

**DISMAS CHARITIES, INC.'S RESPONSE TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S MOTIONS TO DISMISS FOR LACK OF STANDING**

Pursuant to RCFC 7, Plaintiff Dismas Charities, Inc. ("Dismas") responds to Defendant the United States' (the "Government") and the Defendant-Intervenor Bannum, Inc.'s ("Bannum") Motions to Dismiss under RCFC 12(b)(1). Dismas has standing to bring this bid protest because Dismas submitted a fully compliant technical proposal and is therefore an "interested party" under 28 U.S.C. § 1491(b).

**NATURE OF THE CASE**

In this post-award bid protest case, the Government and Bannum have alleged that Dismas submitted a response to the procuring agency's request for final proposal revisions that took express exception to a minimum requirement of the solicitation, and thus is not an interested party to bring this protest. This allegation is patently wrong and contradicted by the Federal Bureau of Prisons' ("BOP") actions prior to the advent of the controversy. Dismas's response to

the agency's request for final proposal revisions did not take exception to a minimum requirement of the solicitation. Rather, Dismas's response provided the agency with an alternative, additional option for that minimum requirement that the agency could freely choose or disregard. Dismas's offering of this alternative option did not render its proposal non-responsive, nor did it rob Dismas of interested party status. BOP's statements in the Administrative Record belie the Government's (and Bannum's) new-found post hoc argument.

Additionally, although Bannum alluded to this issue in its filings at the Government Accountability Office ("GAO") in the course of Dismas's protest there, GAO, which could have dismissed the protest on standing grounds, instead decided the case on the merits. For all of these reasons, this Court should therefore deny the Government's and Bannum's motions and re-establish a schedule for full briefing on the merits.

## QUESTION PRESENTED

Whether Dismas submitted a response to the agency's request for final proposal revisions that fully complied with the Solicitation and is thus an "interested party" under 28 U.S.C. § 1491(b).

## STATEMENT OF THE FACTS

### A. The Solicitation

Under Request for Proposals No. 200-0861-SC ("Solicitation" or the "RFP"), BOP requested proposals for the procurement of Community Sanctions Center ("CSC") services for Federal offenders held in Austin, Texas under the authority of United States statutes. AR 563. The Solicitation indicated that BOP would award a single Indefinite Delivery/Requirements-type contract with firm-fixed unit-prices ("inmate day rates") for a two-year base period and three one-year options to the responsible offeror whose proposal represented the best value to the

Government after evaluation in accordance with the evaluation factors and subfactors in the Solicitation. AR 567, 777, 778. The Solicitation required offerors to submit a Technical/Management Proposal, a Business Proposal, and Past Performance information. AR 780. The due date for proposal submissions was July 14, 2005. AR 889.

One of the Solicitation's requirements was that the contractor's proposed facility had to be "fully operational and ready for performance" within 120 days of contract award. AR 724. The Solicitation required each offeror to submit a plan for complying with the 120-day requirement together with, in the case of "substantial new construction or renovation," a Critical Path Method ("CPM") diagram. AR 764. Notably, the Solicitation's Section L.6, which detailed the required content of Technical/Management proposals, stated that contract performance would be "120 days after contract award, unless otherwise specified by the Contracting Officer." AR 782 (emphasis added).

**B. BOP's Evaluation and Award Determination**

On June 14, 2005, Dismas timely submitted its proposal to BOP. AR 1095. Dismas's proposal addressed each of the evaluation factors and subfactors in detail, and provided BOP with all of the information requested in the Solicitation, without taking any exception to any of the Solicitation's terms, conditions, or requirements. Dismas's proposal included a complete 120-day availability plan (AR 1212-14) and CPM diagram (AR 1216-17). Following two rounds of discussions, on November 8, 2005, BOP requested that Dismas submit its Final Proposal Revision ("FPR"), to include "a per diem rate for the base period and each of the three one-year options." AR 855. Notably, BOP's FPR request did not prohibit Dismas from proposing modifications, but rather advised that any modifications would have to be received by BOP no later than the November 16, 2005 deadline for responses to the FPR request. *Id.* On November

14, 2005, Dismas submitted its response to the FPR request. AR 859. Dismas's response included, among other things, the required updated per diem rates. AR 860. Dismas's response also included, as an alternative option, a [redacted] (AR 863-65) and [redacted] (AR 870-71). Dismas submitted this alternate plan merely for BOP's consideration, and introduced it exactly as such. AR 859 ("Please *consider* the following information in response to your Final Proposal Revision notification letter dated Nov. 8, 2005.") (emphasis added).

Dismas proposed this alternate plan as a result of the tumult in the construction industry following Hurricanes Katrina and Rita. In recognition of these circumstances, Dismas had identified an opportunity to provide BOP with a [redacted] albeit [redacted]. AR 859. Nowhere in Dismas's response did Dismas instruct or ask BOP to remove its [redacted] from inclusion in any contract awarded to Dismas.

In its Source Selection Decision ("SSD"), BOP recognized that Dismas's [redacted] was an option, additional to its [redacted], and that the inclusion of this option did not render its proposal non-compliant with the minimum requirements of the Solicitation. The SSD simply stated that Dismas's [redacted] AR 1315 (emphasis added). The SSD did not state that Dismas's [redacted]. The SSD, in fact, stated that Dismas's FPR response had been "reviewed and determined to be acceptable." AR 1307.

The SSD noted that Bannum's overall total price was $5,680,820.00. AR 1307. The next lowest price was Dismas's, at $[redacted]. *Id.* Cornell Companies, Inc. ("Cornell"), the third offeror, had the highest price at $[redacted]. *Id.*

On March 28, 2006, BOP announced that it had awarded the Contract to Bannum. AR 455. BOP stated, "All offers were technically acceptable . . . ." *Id.* On that same date, Rebecca Canfield, the Contracting Officer, signed the Contract on behalf of the Government. AR 463. Contract performance was to begin on September 1, 2006. AR 464.

On March 29, 2006, Dismas timely requested a postaward debriefing from BOP pursuant to 48 C.F.R. § 15.506. AR 920-21. On May 31, 2006, BOP responded to this request stating, *inter alia*, "Dismas' proposal also met the requirements of the solicitation in every factor of the solicitation and had a very good solution for meeting the needs and objectives of the program." AR 923.

## C. Dismas's Bid Protest at the Government Accountability Office

On June 5, 2006, Dismas timely filed a bid protest at the Government Accountability Office ("GAO") challenging the award to Bannum. AR 1626-85. In its GAO protest (B-298390), Dismas challenged BOP's failure to follow the evaluation criteria in evaluating proposals under the Technical/Management and Past Performance Evaluation Areas and BOP's failure to make award based on the best value. *Id.*

In its Comments on the Agency Report in the protest, Bannum misrepresented Dismas's FPR submission of its [redacted] as an [redacted] AR 1780 (emphasis added).[1] Bannum provided no support for its allegation that Dismas [redacted], and did not further elaborate on its allegation, beyond stating that Dismas should have been

[1] Notably, although contract performance was to have begun on September 1, 2006, and the GAO protest was decided prior to that date, Bannum has apparently not yet begun contract performance. Thus, notwithstanding Bannum's assertion that the 120-day start-up was a requirement of contract performance, Bannum apparently could not meet this requirement.

eliminated from the competition because it could not show prejudice and was not an interested party. *Id.* At no time during the GAO protest did BOP join Bannum's motion to dismiss on this ground.

On August 21, 2006, GAO denied Dismas's protest on the merits with no mention of Bannum's "interested party" allegation against Dismas. The protest was not dismissed for lack of standing. AR 1863-69.

## ARGUMENT

### I. DISMAS'S PROPOSAL COMPLIED WITH THE SOLICITATION'S REQUIREMENTS AS BOP ACKNOWLEDGED ON THREE SEPARATE OCCASIONS

Contrary to the Government's and Bannum's post-hoc arguments, the Administrative Record reflects that BOP continued to consider Dismas's proposal technically compliant with the Solicitation's minimum requirements after Dismas submitted its FPR.

The Government and Bannum's position that Dismas was not an interested party depends entirely on the allegation that Dismas's FPR did not comply with a minimum requirement of the Solicitation. Dismas's proposal and response to BOP's FPR request, however, as BOP itself recognized in the SSD, not only complied fully with the Solicitation's requirements, but also provided BOP with [redacted], [redacted] by the Solicitation. This [redacted], offered by Dismas simply for BOP's *consideration* ("Please consider the following information in response to your Final Proposal Revision notification letter," AR 859), would have provided BOP, [redacted], a "[redacted]

[redacted]" of the Solicitation. *Id.* Nowhere in its FPR did Dismas take exception, much less express exception, to the Solicitation's [redacted].[2]

Furthermore, this Court and the Federal Circuit will review the Administrative Record to determine whether the agency considered a proposal compliant. *See Galen Med. Associates, Inc. v. United States*, 56 Fed. Cl. 104, 108 (2003) (finding that a protester had standing to bring a bid protest where it had submitted both a primary and alternate site, the proposals had been evaluated on the merits by the procuring agency, and there existed "no evidence that [the procuring agency] found plaintiff's proposal technically unacceptable"), *aff'd*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (affirming lower court decision that found the agency had not found the protester's proposal non-compliant). In this regard, BOP's statements and actions during the procurement and post-award process provide ample support that BOP considered Dismas's proposal compliant with the Solicitation's minimum requirements (and militate against Bannum's attempts to distinguish *Galen*).[3] Just as in *Galen*, Dismas provided the procuring agency with a

---

[2] On this point, it is informative to note Bannum's behavior following the award decision. In a March 23, 2006 letter from the Contracting Officer to Bannum, BOP stated [redacted]. AR 415. In its response to BOP's letter, Bannum [redacted]. AR 418. Bannum [redacted]. AR 419. Bannum then pointed to [redacted]. AR 419. Observed even in a light most favorable to Bannum, its post-award "inquiry" [redacted], makes its argument concerning Dismas's interested party status particularly specious.

[3] The case law that Bannum invoked for its proposition that an FPR must be "responsive" or "conform" to the Solicitation's minimum requirements actually supports Dismas's position. In *Marylou's Transportation Service*, GAO concluded that "the agency reasonably determined that [the protester] was not offering to meet all of the requirements of the scope of work and

[redacted] the procuring agency evaluated the proposals on the merits, and (rather than any evidence showing the procuring agency found Dismas's FPR technically unacceptable) BOP stated in the SSD that Dismas's FPR had been "reviewed and determined to be acceptable." AR 1307.[4]

BOP's notice to Dismas of the award and post-award debriefing to Dismas similarly support the conclusion that BOP considered Dismas's proposal compliant. The Federal Acquisition Regulation ("FAR") requires an agency to provide in its notification to an unsuccessful offeror, *inter alia*, "the reason(s) the offeror's proposal was not accepted" for award. *See generally* 48 C.F.R. § 15.503(b)(1)(v). Far from informing Dismas that its proposal was non-compliant as a reason for awarding to Bannum, BOP's notice stated that all offerors were found "technically acceptable." AR 455. The FAR also requires that an agency "shall" include in a debriefing, *inter alia*, the "Government's evaluation of the significant weaknesses or deficiencies in the offeror's proposal . . . ." 48 C.F.R. § 15.506(d)(1); *see also* 41 U.S.C. § 253b(e)(2)(A). An offeror's failure to comply with a minimum requirement of a solicitation would constitute a deficiency that must be disclosed during a debriefing. *See* 48 C.F.R. § 15.001 (defining "deficiency" as "a material failure of a proposal to meet a Government

---

therefore was technically unacceptable, since [the protester's] 'proposal' included some required items but excluded others." *Marylou's Transp. Serv.*, B-261695, Sep. 28, 1995, 95-2 CPD ¶ 154 at 3. By contrast, Dismas's proposal and FPR not only met all of the Solicitation's requirements, but also provided an [redacted] for BOP's consideration.

4 In making the argument that Dismas's proposal is non-compliant, both the Government and Bannum appear to question BOP's SSD. *See* Gov't Motion to Dismiss at 3-4 ("The Technical Management Evaluation section of the SSD was largely copied from the pre-FPR evaluations . . . ."); Bannum's Motion to Dismiss at 11 (asserting that the SSD used Dismas's "pre-FPR" rating). Such assertions support Dismas's protest grounds that BOP failed to conduct a rational source selection decision and failed to comply with 48 C.F.R. § 15.308 ("The source selection decision shall be documented, and the documentation shall include the rationale for

requirement or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level"). Far from informing Dismas that it had any deficiencies or significant weaknesses based on a failure to comply with a minimum requirement, BOP instead informed Dismas that its "proposal also met the requirements of the solicitation in every factor of the solicitation and had a very good solution for meeting the needs and objectives of the program." AR 923. Thus, at least twice after award when BOP was required by law to inform Dismas if it failed to comply with the Solicitation, BOP failed to do so.

Ultimately, the Administrative Record includes ample support that BOP found Dismas's proposal compliant. The Government's and Bannum's litigation-inspired position to dismiss this protest is nothing more than a post hoc rationalization that is unsupported by BOP's decision as reflected in the Administrative Record. *See Fort Carson Support Services v. United States*, 71 Fed. Cl. 571, 591-92 (2006) ("[A]ny new explanations of the evaluation process made post-award are the sort of '*post hoc* rationalizations' that courts reject when offered by the government in bid protest cases."); *Arch Chems., Inc. v. United States*, 64 Fed. Cl. 380, 386 (2005) (noting that "courts reviewing an administrative record recognize that they must reject 'post hoc rationalizations' as a basis for the agency action"); *see also Gose v. United States Postal Serv.*, 451 F.3d 831, 838-39 (Fed. Cir. 2006) (declining to defer to agency's post hoc rationalizations unsupported by administrative record); *Julius Goldman's Egg City v. United States*, 697 F.2d 1051, 1058 (Fed. Cir. 1983) ("A principle of contract interpretation is that the contract must be interpreted in accordance with the parties' understanding as shown by their conduct before the controversy."). "The place to look for the required rationale is the Source

---

any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs.").

Selection Decision Document." *Fort Carson Support Servs.*, 71 Fed. Cl. at 592. Here, the SSD clearly and unequivocally stated that Dismas's FPR had been "reviewed and determined to be acceptable." AR 1307.

## II. DISMAS IS AN INTERESTED PARTY

Because Dismas's FPR did comply with the Solicitation, Dismas is an interested party with standing to bring this action in this Court. *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

This Court applies a two-part test to determine whether a protester is an interested party. The protester "must show that it was an *actual or prospective bidder*; and the protester must have a direct economic interest in the procurement." *Comprehensive Health Services, Inc. v. United States*, 70 Fed. Cl. 700 (2006). Dismas was an actual bidder, and had submitted a fully compliant proposal and FPR, as stated by BOP in the SSD and post-award communications. AR 1307 ("All of the offerors' responses to 'Request for Final Proposal Revisions' have been reviewed and determined to be acceptable"). Dismas had a direct economic interest in the procurement, as the next-lowest bidder to Bannum. AR 1307 ("Dismas had an overall total amount of $[redacted], Bannum of $5,680,820.00, and Cornell of $[redacted]"). Dismas, therefore, is an interested party with standing to bring this action.

## III. GAO DECLINED TO DISMISS THE BID PROTEST FOR LACK OF STANDING

Finally, perhaps the most telling fact concerning this issue is that when presented with the opportunity to do so, GAO did not dismiss Dismas's bid protest on the ground that Dismas was not an interested party. Rather, GAO proceeded to decide the protest on the merits. AR 1863-69.

In this Court, the definition of an "interested party" pursuant to 28 U.S.C. § 1491(b) is to be construed in accordance with the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3551(2):

> We therefore construe the term "interested party" in § 1491(b)(1) in accordance with the CICA, and hold that standing under § 1491(b) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or failure to award the contract.

*American Fed'n of Gov't Employees, AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). Under GAO's rules, the definition of an interested party is nearly identical (as GAO is subject to CICA's "interested party" definition): "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract." 4 C.F.R. § 21.0(a)(1). Only interested parties may file bid protests at GAO. 4 C.F.R. § 21.1(a). GAO has the authority to dismiss rather than decide bid protests filed by parties that do not qualify as interested parties. 4 C.F.R. § 21.1(i).

In the course of the protest, Bannum alleged that, based on its FPR response, Dismas was not an interested party. AR 1780. Had GAO agreed with Bannum, rather than reach the merits of the case, GAO could have dismissed the protest. GAO instead did reach and decide the bid protest on the merits, a far more time-consuming task than a dismissal based on Bannum's allegation. AR 1863-69. Not even BOP alleged that Dismas lacked interested-party status during the BOP protest.

Having brought the same allegation to this Court under the identical standard for "interested party," Bannum has similarly provided this Court no basis to dismiss for lack of standing, and therefore, just as GAO, this Court should allow this case to be decided on the merits.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Dismas respectfully requests that the Government's and Bannum's motions be denied.

Dated: January 3, 2007

Respectfully submitted,

s/ Alex D. Tomaszczuk
Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102

703.770.7940
703.770.7901 (fax)

Attorney of Record
Dismas Charities, Inc.

*Of Counsel*:

Daniel S. Herzfeld
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102
703.770.7900
703.770.7901 (fax)