# In the United States Court of Federal Claims

| | |
|---|---|
| DISMAS CHARITIES, INC., Plaintiff, | |
| v. | No. 06-825C |
| THE UNITED STATES, Defendant, | (Filed: February 7, 2007)[1] |
| and | Bid protest; jurisdiction; standing; interested party. |
| BANNUM, INC., Defendant-Intervenor. | |

*Alex D. Tomaszczuk*, Pillsbury Winthrop Shaw Pittman, LLP, McLean, Virginia, for plaintiff. *Daniel S. Herzfeld* and *Orest J. Jowyk*, Pillsbury Winthrop Shaw Pittman, LLP, McLean, Virginia, of counsel.

*Kenneth Kessler*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the brief were *Deborah A. Bynum*, Assistant Director, *David M. Cohen*, Director, and *Peter D. Keisler*, Assistant Attorney General.

*Michael A. Gordon*, Holmes & Gordon, Rockville, Maryland, for defendant-intervenor. *Fran Baskin*, Holmes & Gordon, Rockville, Maryland, of counsel.

Margolis, Senior Judge:

**OPINION**

This post-award bid protest is before the Court on motions to dismiss. Both defendant and

[1] This Opinion was filed originally under seal on January 18, 2007, pursuant to the protective order filed in this case. The parties jointly requested certain redactions, and that text is replaced by brackets ([ ]).

defendant-intervenor have brought motions to dismiss under Rule 12 of the Rules of the United States Court of Federal Claims based on the administrative record. Although premised on lack of jurisdiction and lack of standing, respectively, the essential issue is identical in the briefs–whether plaintiff is an "interested party" under 28 U.S.C. § 1491(b). The Court heard oral arguments on January 11, 2007, on the defendants' motions to dismiss plaintiff's complaint and request for a preliminary injunction.

## FACTS

The Federal Bureau of Prisons ("BOP"), an agency of the United States Department of Justice, issued a solicitation on April 15, 2005, for a residential Comprehensive Sanctions Center and associated services for federal offenders in Austin, Texas. Administrative Record ("AR") 552. The solicitation was for a firm-fixed unit price requirements contract with a two-year base period and three option years. AR 553. Three contractors submitted timely proposals: Dismas Charities, Inc. ("Dismas"), the plaintiff in this case; Bannum, Inc. ("Bannum"), the intervenor; and [ ], the incumbent contractor, which is not a party to this action. AR 553.

Because none of the offerors had met all of the solicitation requirements, the Contracting Officer began written discussions with them on September 9, 2005. AR 554. She conducted a second round of written discussions in October 2005 and issued letters requesting Final Proposal Revisions on November 8, 2005. AR 555. The BOP rated both Bannum and Dismas as Blue/Very Good for past performance, AR 1310, 1314. Bannum received a Green/Acceptable rating for technical management, while Dismas was rated Blue/Very Good. AR 1314. Bannum submitted a final bid of $5,680,820; Dismas's bid was $[ ]. AR 1307. The BOP ultimately determined that Bannum's proposal was the best value to the government and awarded Bannum the contract on March 28, 2006. AR 556. Dismas timely protested to the Government Accountability Office ("GAO"), which upheld the contract award in a decision on the merits on August 21, 2006. Dismas Charities, B- 298390, 2006 WL 2685309 (Comp. Gen.) (August 21, 2006). Dismas then filed a protest with this Court on December 5, 2006.[2]

## DISCUSSION

The Tucker Act provides this Court with jurisdiction to hear a post-award bid protest by an "interested party." See 28 U.S.C. § 1491(b)(1). The Federal Circuit has held that "interested party" in the Tucker Act should be construed as in the Competition in Contracting Act, 31 U.S.C. §§ 3551-56, making the issue roughly equivalent to standing. E.g., Rex Service Corp. v. United States, 448

---

[2] Plaintiff's response to the motions to dismiss argued that this Court should be persuaded by the fact that the GAO, with an almost identical definition of "interested party" in its jurisdictional rules, decided the case on the merits and without comment on defendant-intervenor's jurisdictional argument. Plaintiff's Response at 10-11. However, this Court is not bound by the GAO's decisions. E.g., PHT Supply Corp. v. United States, 71 Fed. Cl. 1, 9 n.6 (2006) (quoting Gentex Corp. v. United States, 58 Fed. Cl. 634, 636 n. 3 (2003)).

F.3d 1305, 1307 (Fed. Cir. 2006). Specifically, for this Court to have jurisdiction over a bid protest the plaintiff must be an "*actual or prospective bidder*[] or offeror[] whose *direct economic interest* would be affected by the award of the contract or by failure to award the contract." Id. (quoting Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1298 (Fed. Cir. 2001) and 31 U.S.C. § 3551(2)(A)) (emphasis in original). The Federal Circuit has further clarified that, to satisfy the direct economic interest prong, a plaintiff must show "not only some significant error in the procurement process, but also that there was a substantial chance it would have received the contract but for that error." Id. at 1308 (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). In interpreting similar language in the Brooks Act, 40 U.S.C. § 759 (f)(9)(B) (Supp. V 1987), the Federal Circuit held that a plaintiff must have been next in line for award to be an "interested party" with a direct economic interest in the award. United States v. Int'l Bus. Machines Corp., 892 F.2d 1006, 1011 (Fed. Cir. 1989). Plaintiff bears the burden of establishing subject matter jurisdiction, and the Court must dismiss this action if plaintiff fails to do so. A & D Fire Protection, Inc. v. United States, 72 Fed. Cl. 126, 131 (2006).

According to the Government and Bannum, Dismas is not an interested party because its offer did not comply with the requirements for Final Proposal Revisions, and Dismas therefore could not have been awarded the contract even if its allegations about errors in the award to Bannum proved true. The Request for Proposals required a 120-day start-up period between contract award and performance. AR 724, 788. In its Final Proposal Revision, dated November 14, 2005, however, Dismas cited concerns about the effects of recent hurricanes on construction in the Southeast and stated, "we propose to revise our plans for facility investment . . . ." AR 859. The documents included a revised development schedule and critical path schedule reflecting a 240-day start-up period from contract award to performance. AR 860. The proposal also included revised pricing data, "[r]eflecting these recently and dramatically changed market conditions." AR 860. The total contract price was $[ ], which was $[ ] more than in Dismas's original, June 14, 2005, offer of $[ ]. Compare AR 860 with AR 1236.

This Court has held that "[a] bidder submitting a nonresponsive bid has no standing to protest an award, because it has no chance of receiving the award." A & D Fire Protection, 72 Fed. Cl. at 138. Although responsiveness is generally used to describe sealed bids, the same concept applies to final offers submitted after negotiations. Just as a sealed bid that does not meet the minimum solicitation requirements is non-responsive and cannot be considered for contract award, FAR § 14.301(a), a Final Proposal Revision that does not conform to the solicitation requirements is technically unacceptable and cannot be considered for award unless the agency reopens negotiations for all offerors or modifies the solicitation. See FAR § 15.307(b); cf. Labat-Anderson, Inc. v. United States, 42 Fed. Cl. 806, 841 (1999) (contrasting technically unacceptable initial proposals with technically unacceptable Best and Final Offers).

The Government and Bannum claim that Dismas submitted a non-compliant proposal by including the 240-day development schedule. However, Bureau of Prisons decisionmakers evaluated Dismas's Final Proposal Revision on its merits in its Source Selection Decision ("SSD") dated February 6, 2006, and never explicitly stated that it did not comply with the solicitation. The

SSD elsewhere declared that "[a]ll of the offerors' responses to 'Request for Final Proposal Revisions' have been reviewed and determined to be acceptable," AR 1307, that "Dismas received a color rating of Blue/Very Good" for the Site Location factor under Technical/Management, which included the comments about the 240-day start-up period, AR 1315, and that "Dismas met the minimum requirements" for Technical/Management and "was rated higher than the other offerors" for that category. AR 1319. Even the post-award debriefing letter, dated May 31, 2006, declared that "Dismas' proposal also met the requirements of the solicitation in every factor of the solicitation and had a very good solution for meeting the needs and objectives of the program." AR 923.

In a similar case, the Court determined that a plaintiff whose potentially non-responsive bid was treated as an alternative proposal by the agency, which then evaluated the bid on the merits, did have a substantial chance of receiving the award, and therefore, was an interested party for the purposes of this Court's bid protest jurisdiction. Galen Medical Assoc., Inc. v. United States, 56 Fed. Cl. 104, 108 (2003), aff'd 369 F.3d 1324 (Fed. Cir. 2004). Despite Dismas's current argument that, like the Galen bid, its 240-day proposal was "an alternative, additional option," the Final Proposal Revision never described it as such. AR 859-60. In fact, Plaintiff's counsel admitted at the hearing that no language in the record itself supported Dismas's argument that the 240-day start-up plan was an alternative proposal. Transcript at 30-31. Instead, Dismas used the words "revise" or "revised" at least five times in the Final Proposal Revision in referring to its new plans. AR 859-60. These contemporaneous descriptors point to a replacement of the original 120-day plan with a 240-day plan, rather than a possible alternative. The fact that the Bureau of Prisons personnel evaluated Dismas based on the increased costs associated with the 240-day plan, compare AR 860 with AR 1319, demonstrates that they also considered it a substitute rather than an option. In addition, there was no evidence in Galen that the contracting officials "found plaintiff's proposal technically unacceptable." 56 Fed. Cl. at 108. In contrast, the Bureau of Prisons officials in this case noted in the final SSD that Dismas's 240-day start-up period "would extend beyond the required performance date." AR 1315.[3]

Because Dismas's 240-day proposal was not "an alternative, additional option," A & D Fire Protection provides more useful guidance. In that case, the Court held that a protestor was not an "interested party" because its bid had not included a required bid bond and was therefore non-responsive. 72 Fed. Cl. at 140. The Court concluded that the protestor did not have standing–even though its bid had been evaluated twice by the agency, and it had not been declared non-responsive. Id. Similarly, Dismas did not meet a fundamental requirement of the solicitation, and it "cannot excuse its failure to properly submit a [requirement] by the agency's lack of diligence in removing a nonresponsive bid from consideration." See id. Dismas submitted a Final Proposal Revision that did not conform to the solicitation requirements. As a result, it did not have a

[3] In full, the SSD stated, "Dismas proposed a revised development schedule that included a 240 day start-up period for contract performance. Based on the expiration date of the current contract, Dismas' request of a 240 day start-up period would extend beyond the required performance date." AR 1315.

substantial chance of contract award and cannot be an "interested party" for purposes of this Court's bid protest jurisdiction.

The Court has considered plaintiff's additional arguments in favor of jurisdiction and finds them without merit. The motions to dismiss are **GRANTED**. The Clerk shall dismiss the complaint. Each party shall bear its own costs.

s/Lawrence S. Margolis
LAWRENCE S. MARGOLIS
Senior Judge, U.S. Court of Federal Claims

February 7, 2007