**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| DISMAS CHARITIES, INC. | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-825 |
| v. | ) | Judge Margolis |
| | ) | **FILED UNDER SEAL** |
| THE UNITED STATES, | ) | |
| Defendant, and | ) | |
| | ) | |
| BANNUM, INC., Defendant-Intervenor | ) | |

MOTION TO DISMISS FOR LACK OF STANDING BASED ON THE ADMINISTRATIVE RECORD AND REQUEST TO AMEND BRIEFING SCHEDULE

Michael A. Gordon
s/ Michael A. Gordon
Counsel of Record for Defendant-Intervenor, Bannum,. Inc.
HOLMES & GORDON
17 West Jefferson Street
Rockville, Maryland 20850
(301) 340-1251 (telephone)
(301) 340-1253 (facsimile)

OF COUNSEL:
Fran Baskin, Esquire
HOLMES & GORDON
17 West Jefferson Street
Rockville, Maryland 20850
(301) 340-1251 (telephone)
(301) 340-1253 (facsimile)

December 15, 2006

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

**TABLE OF CONTENTS**


BANNUM'S MOTION TO DISMISS ON THE ADMINISTRATIVE RECORD 5

NATURE OF THE CASE 5

FACTUAL BACKGROUND 7

A. Introduction 7

B. The Request for Proposals 7

C. Final Proposal Revisions 8

D. BOP's Contemporaneous Position [redacted] 9

E. The Technical Evaluations and Source Selection Decision 9

F. Dismas' GAO Protest 11

G. Dismas' Pleadings to this Court 11

LEGAL ARGUMENT 12

I. A Nonconforming Offeror Cannot be an Interested Party 12

II. Dismas Offer is Materially Non-Conforming 16

III. Dismas Is Not In Line for Award 16

IV. The BOP's Inaction Does Not Confer Interested Party Status on Dismas 17

CONCLUSION AND REQUEST TO AMEND BRIEFING SCHEDULE 19


**CASES**


Alfa Laval Separation v. United States, 175 F.3d 1365 (Fed. Cir. 1999) passim

American Federation of Government Employees, AFL-CIO v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) 12

Burroughs Corp v. United States, 617 F.2d 590, 596 (1980) 14

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**


Galen Medical Associates, Inc. v. United States, 56 Fed. Cl. 104, aff'd 369 F.3d 1324 (Fed. Cir. 2004) 17, 18

Gentex Corp. v. United States, 58 Fed. Cl. 634, 650 (2003) 16

International Resource Recovery Inc. v. United States, 60 Fed. Cl. 1 (2004) 16

Information Technology & Applications Corp. v. United States, 316 F.3d 1312 (Fed. Cir. 2003) 15, 18

Labat-Anderson, Inc. v. United States, 42 Fed. Cl. 806 (1999) passim

Lujan v. Defenders of Wildlife, 504 U.S. 551, 561 (1992) 12, 15

Myers Investigative & Servs. V. United States, 275 F.3d at 1366, 1369 (Fed. Cir. 2002) 12, 14

Rex Service Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006) 12

Statistica Inc. v. United States, 102 F.3d 1577, 1582 (Fed. Cir. 1996) 14

United States v. International Business Machines Corp., 892 F.2d 1006, 1012 (1989) ("IBM") passim


**ADMINISTRATIVE DECISIONS**


Conrac Corporation, SCD Division, 66 Comp. Gen. 444, B-225646, May 11, 1987, 87-1 CPD ¶497 15

Cooperativa Maratori Riuniti-Anese, October 15, 2004, B-294747, 2004 CPD ¶210 16

Galen Medical Associates, Inc., B-288661.4-.5, February 25, 2002, 2002 CPD ¶44 17

Marylou's Transportation Service, B-261695, September 28, 1995, 95-2 CPD ¶154 14

Spectrum Controls Sys., 97-1 CPD ¶89 at 3-4 (1997) 14


**STATUTES AND REGULATIONS**


18 U.S.C. §3624(c) 7

28 U.S.C. §1491(b) passim

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**


| | |
|---|---|
| Competition in Contracting Act, 31 U.S.C. §3551(2) | passim |
| 41 U.S.C. §253a(a)(1) | passim |
| FAR §15.307(b) | 8, 15 |


**COURT RULES**


| | |
|---|---|
| Court of Federal Claims Rule 12 | 5 |

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| DISMAS CHARITIES, INC.<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant, and<br><br>BANNUM, INC., Defendant-Intervenor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br>No. 06-825<br>Judge Margolis<br>**FILED UNDER SEAL** |

MOTION TO DISMISS FOR LACK OF STANDING BASED ON THE ADMINISTRATIVE RECORD AND REQUEST TO AMEND BRIEFING SCHEDULE

Pursuant to Court of Federal Claims Rule 12, Defendant-Intervenor Bannum, Inc. ("Bannum") respectfully moves to dismiss the complaint filed by Dismas Charities, Inc. ("Dismas"). Dismas cannot meet its burden of proof to establish that it is an "interested party" under 28 U.S.C. §1491(b) because it cannot show that it submitted a fully compliant technical proposal.

Bannum has been advised on December 15, 2006 that Defendant concurs in positions in this motion and will be filing a separate motion to dismiss. Bannum again requests that this Court delay full briefing on the merits until it has ruled on this motion.

NATURE OF THE CASE

This case involves a protest by Dismas of an award to Bannum based upon the allegedly improper evaluation of Bannum's proposal. Dismas has asserted that but for these evaluation errors, it would have won the contract. Dismas claimed that it took no exceptions to any of the Solicitation's requirements and had the superior offer. Complaint, ¶18; Dismas Motion for a Preliminary Injunction, pp. 13-14. However, this statement, at best, refers to Dismas' initial offer, not its FPR, and was deliberately misleading.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

The undisputed facts show that in its Final Proposal Revision ("FPR"), the final offer following the second round of discussions, Dismas took express exception to a minimum requirement of the Request for Proposals ("RFP") -- [redacted]. In its FPR, Dismas proposed for the first time that [redacted]

The only way Dismas' offer could have conformed to the RFP would have been through an amendment and additional discussions. Dismas knew when it submitted its FPR that it had no right to require the BOP to amend the RFP to enable its offer to be become compliant. The BOP did not issue an amendment and had previously rejected a request from a prospective offeror to do so. Dismas did not challenge the BOP's decision not to amend or conduct additional discussions after award was made to Bannum. Indeed, there would have been no basis for such a protest.

Not all offerors who are not selected are interested parties with a right to file a protest under 28 U.S.C. §1491(b). Only those which have a direct economic interest have this right. As a nonconforming offeror following the conclusion of discussions, Dismas was not really an offeror at all since it had rendered itself ineligible for award and thus, it was not in line for award. Bannum and another offeror, [redacted], which were evaluated as acceptable, were eligible for award. [redacted] did not protest.

Thus, even assuming for the sake of argument only that Dismas were to succeed on the merits of its claims regarding the "unlawful" award to Bannum and Bannum was eliminated or its offer downgraded, Dismas is not next in line for award and thus, would not have had a substantial chance of being awarded the contract. Bannum's motion to dismiss should be granted.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

FACTUAL BACKGROUND

A. Introduction

The Federal Bureau of Prisons ("BOP") issued a Request for Proposal for a contract for Comprehensive Sanction Center ("CSC") services. These services generally require the contractor to house and monitor federal inmates selected and assigned by the BOP to serve the last 10% of their prison sentence. 18 U.S.C. §3624(c). AR 552-53, 577.

B. The Request for Proposals

The RFP put offerors on notice that they had to conform to the minimum requirements to be eligible for award. Section M.2(B) states:

> "Award will be made to the offeror whose proposal, conforming to the solicitation, is determined to be in the best interests of the Government, price and other factors considered. Other factors include:
>
> * * *
>
> "(B) The offeror's compliance with minimum or mandatory technical/management requirements to the extent specified in Terms and Conditions and/or specifications contained in the solicitation." AR 785 (emphasis added).

This was confirmed in the ratings definitions to be used in the evaluation, where "Red-Unacceptable" is defined:

> "Offeror's proposal fails to meet the requirements of the solicitation. Their proposal shows they have an unacceptable solution for meeting the needs and objectives of the program. There are numerous weaknesses. The weaknesses will be very difficult to correct or are not correctable." AR 786 (emphasis added).

The minimum requirement at issue, to have the contractor's facility fully operation within 120-days of award is emphasized as mandatory throughout the RFP. Section F.3, Performance states in pertinent part:

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

"Contractors facility shall be fully operation and ready for performance to begin within 120 days after the date of contract award document ... is signed ...." AR 724. (emphasis added).

Attachment 9, Compliance Matrix, states in pertinent part:

"Offeror shall provide a copy of architectural floor plans, site plans, and photographs that are within 120 days of proposal submission) pursuant to the PWS. Offerors shall complete and submit the CCC/CSC/MINT Contract Facility Certificate of Compliance provided as an attachment. Offerors shall submit their plan for complying with the 120-day availability requirement. The Plan shall not exceed 3 pages. In cases of substantial new construction or renovation, a detailed Critical Path Method (CPM) diagram shall be submitted, which demonstrates that the facility will be operational within 120 days of contract award. The definition of "substantial" is provided in RFP, Section J, Environmental Checklist. Offerors are to assure that the Plan is relevant to the location required under the solicitation." AR 764 (emphasis added); see also §L.7(e), AR 781.

Attachment 9 also states the offeror's Facility rating will be evaluated based on:

"... (3) the soundness and credibility of the offeror's plan for ensuring operational availability within 120 days after contract award." AR 764, (j), see also §M.5.2.4, AR (emphasis added).

C. Final Proposal Revisions

Three offers were received – from Bannum, Dismas and [redacted] (Dismas did not mention [redacted] by name in its pleadings). AR 553. The BOP conducted two rounds of discussions with all offerors. AR 554-55.

On November 8, 2005, requested an FPR from Dismas stating:

"Evaluation of Dismas' technical/management proposal and offer has been completed. In accordance with Federal Acquisition Regulation (FAR 15.307, Dismas now has the opportunity to submit a final proposal revision, including a per diem rate for the base period and each of the three one year option periods. Please be advised that if any modification is submitted, it must be received by the date and time specified below and is subject to FAR 15.208, Late Submissions, Modifications and Withdrawal of Proposals." AR 858.

On November 14, 2005, Dismas submitted its last FPR. AR 859-71.

AGREED UPON REDACTED COPYMAY
BE MADE PUBLIC

In its prior offers, Dismas proposed [redacted] See AR 1212. Ex. A. In its FPR, however, after [redacted] Dismas stated:

> "[redacted] AR 860 (italics in original).

Dismas included proposal change pages to replace its prior [redacted] AR 865, 870-71. Ex. B.

D. BOP's Contemporaneous Position on the [redacted]

On June 23, 2005, the [redacted], a prospective offeror, requested that the BOP [redacted] explained [redacted] grounds for its request. AR 1093-08.

The BOP rejected [redacted] request, stating:

> [redacted]." AR 99.

E. The Technical Evaluations and Source Selection Decision

At some point prior to the writing of the SDD, the BOP Technical Evaluation Panel ("TEP") completed a Technical/Management ("T/M") evaluation document. In this document, Dismas received an overall Blue rating in the T/M factor and in the Facility subfactor, received a Green rating. AR 1450. Bannum and [redacted] each received overall Green ratings in the T/M factor. All offerors were evaluated as low risk. AR 1449-50.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

Nowhere in the T/M evaluation document did the evaluators mention the change in Dismas' FPR with respect to [redacted] AR 1449-56. The TEP Consensus Working Papers indicate that the last TEP review of offers was completed on November 8, 2005. AR 1457-67. As noted above, this was prior to Dismas' FPR, dated November 14, 2005. Apparently to meet scheduled dates, the TEP was not reconvened late in the process to address the last FPR. Thus, Dismas' ratings on which they claim they are the "superior" proposal were based on its proposals <u>prior to the FPR</u> where it had proposed [redacted]. AR 1212.

Following the T/M evaluation by the TEP, a Source Selection Document ("SDD") was written. It was completed and signed by the BOP Source Selection Authority ("SSA") on February 6, 2006. AR 1319. The SSA rated all offerors Blue in the Past Performance factor. <u>Id.</u> In the T/M factor, the SSA copied the backup for and ratings from the pre-FPR T/M evaluation document. AR 1314-18. However, under the Site Validity and Suitability and Community Relations Program factor, the SSA added the following paragraph:

> "Dismas proposed [redacted]." AR 1315.

No other changes were made to the pre-FPR T/M evaluation ratings and they were the basis for the best value trade off. Dismas still received an overall Blue rating in this factor and a Green rating [redacted] All offerors were rated as low risk. AR 1318-19.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

Bannum's final price of $5,680,820 was [redacted] than Dismas' price of [redacted] and [redacted] than [redacted] price (which was only [redacted]). The BOP selected Bannum as the best value because Dismas' pre-FPR higher rating in the Technical/Management factor did not warrant the [redacted]. AR 1319.

F. Dismas' GAO Protest

On July 13, 2006, Dismas filed a protest at the Government Accountability Office ("GAO") raising protest grounds relating to the evaluation of Bannum's offer only. AR 1626-85. In its response to the protest, Bannum raised the issue of Dismas' non-compliance as grounds to dismiss Dismas' protest asserting that Dismas was not an interested party. AR 1780, 1838. Apparently because the GAO did not need to resolve this issue to deny the protest, its decision did not address it. AR 1871-78.

G. Dismas' Pleadings to this Court

Dismas' pleadings to this Court state that "but for the procurement errors relating to Bannum's offer, Dismas would have received the award." Complaint ¶6. Dismas Motion for a Preliminary Injunction, p. 13, 14. While Dismas claimed in its Complaint ¶18 and Memorandum pp. 13, that it had taken "no exceptions to any of the Solicitation's terms, conditions or requirements," these statements were disingenuous. Apparently to avoid an outright falsehood, these statements likely will be argued to be limited to Dismas' initial offer, not its FPR. Such half "facts" reflects Dismas' awareness that its offer is non-conforming. Given that another protest between the parties is pending in this Court, No. 00744-C, it also raises questions of the filing this action was retaliatory. In any event, Dismas cannot meet its burden of proving it is an interested party.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

LEGAL ARGUMENT

I. A Nonconforming Offeror Cannot be an Interested Party

Not every offeror that loses a competition is an "interested party" under 28 U.S.C. §1491(b). In American Federation of Government Employees, AFL-CIO v. U.S., 258 F.3d 1294, 1302 (Fed. Cir. 2001) the Federal Circuit held that "interested party" is to be construed in accordance with the Competition in Contracting Act, 31 U.S.C. §3551(2), the statute applicable to protests filed at the Government Accountability Office ("GAO"). Based on the language of that statute, the Court held:

> "We therefore construe the term "interested party" in §1491(b)(1) in accordance with the CICA, and hold that standing under §1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract."

Plaintiff has the burden of proof that it is an "interested party", which is the statutory equivalent of standing. Rex Service Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006) citing Lujan v. Defenders of Wildlife, 504 U.S. 551, 561 (1992). In Lujan, supra, the Supreme Court emphasized that the injury necessary to obtain standing must be concrete and actual, not hypothetical or speculative. Id.

To meet its burden, Dismas must show that but for the procurement errors alleged in its protest, it would have had a substantial chance of winning the contract. See Myers Investigative & Servs. V. United States, 275 F.3d at 1366, 1369 (Fed. Cir. 2002). Dismas cannot meet its burden because it cannot show that its FPR conformed to the minimum RFP requirements and thus, if its protest were to be granted, it would be in line for award. Indeed, by submitting a nonconforming offer in response to a request for an FPR, Dismas is no longer an eligible offeror.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

In United States v. International Business Machines Corp., 892 F.2d 1006, 1012 (1989) ("IBM"), the Court, in analyzing the term "interested party" in conjunction with the Brooks Act, 40 U.S.C. §759 (which prior to its repeal had conferred similar protest jurisdiction on the General Services Board of Contract Appeals), held that a bidder that was not next in line for award was not an interested party because it had no direct economic interest. That was because even if IBM's protest had succeeded, there were other bidders that would have received the award ahead of IBM absent speculative actions by the Government to resolicit bids. Id. at 1011. Since IBM had not challenged the responsiveness of the other bidders who had lower prices, the Court held that IBM was not an interested party. Id.

The Court went farther in explaining the "interested party" concept. Bidders that were non-responsive, which did not meet the minimum solicitation requirements, also could not be next in line for award and were not interested parties:

> "We have suggested above that Congress intended the phrase "interested party" to be a meaningful limitation on the authority of the board to entertain, and this court to review, protests of an agency's conduct of a Brooks Act procurement. We see responsiveness as another facet of the interested party inquiry. When responsiveness is an issue, it must be resolved before the board can proceed. If a bid is not responsive, the protester has no more right to invoke the office of the board than the proverbial man on the street. A nonresponsive bidder is the epitome of one who lacks a direct economic interest. This is not a mere technicality; it is the predicate for the board's right to intervene in governmental procurements. A bidder's standing to protest a contract given to another cannot be divorced from the responsiveness of its offer." (emphasis added).
>
> * * *
>
> The Board must exercise its authority to determine which parties are sufficiently "interested" to have standing before entertaining a potentially unnecessary proceeding with its attendant costs and delay."

**AGREED UPON REDACTED COPYMAY
BE MADE PUBLIC**

While IBM involved sealed bidding, an FPR in a negotiated procurement is the equivalent of a sealed bid in terms of responsiveness or, conformity to the minimum solicitation requirements. FAR §15.307(b). When an FPR (previously called a Best and Final Offer or BAFO) is submitted, discussions are concluded and like a bid, the FPR is either compliant, i.e. "responsive" or "conforms" to the minimum requirements, or it is not. See Marylou's Transportation Service, B-261695, Sept. 28, 1995, 95-2 CPD ¶154. If the FPR does not conform to the minimum requirements, like a non-responsive bid, no award can be made to that offeror. 41 U.S.C. §253a(a)(1); Alfa Laval Separation v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999). A nonconforming offer cannot be in line for award. IBM, supra.

The Court of Federal Claims has recognized the above concept. In Labat-Anderson, Inc. v. United States, 42 Fed. Cl. 806 (1999), this Court noted the difference between a defect in an offer submitted prior to and one submitted after discussions and in terms of having a chance for an award:

> "One circumstance under which a proposal may be determined to have no further chance of award arises when it is determined to be technically unacceptable. A distinction exists here between consideration of initial proposals and BAFOs. An initial proposal may be excluded from the competitive range if it is technically unacceptable and would require major revisions to be made technically acceptable. (citations omitted). The corollary of this statement is that technically unacceptable proposals must generally be considered to be within the competitive range if capable of being made technically acceptable and if the proposal's cost or price term is competitive. (citations and footnote omitted)
>
> *　　　　　　*　　　　　　*
>
> The situation is different with respect to BAFOs, however. Because an agency generally may not reopen discussions after the submission of BAFOs, see FAR 15.611(c); Statistica Inc. v. United States, 102 F.3d 1577, 1582 (Fed. Cir. 1996) and because a technically unacceptable proposal cannot be considered for award see Burroughs, 617 F.2d at 596; Spectrum Controls Sys., 97-1 CPD ¶89 at 3-4 (1997) agencies must generally exclude a technically unacceptable BAFO from the competitive range, regardless of cost or price (citation omitted ...."

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

In Conrac Corporation, SCD Division, 66 Comp. Gen. 444 (1987), B-225646, May 11, 1987, 87-1 CPD ¶497, the GAO stated:

> "An offeror should know that its action in taking exception to a solicitation requirement likely may have a decided impact upon the acceptability of its proposal (citation omitted)... This is especially the case where the exceptions are present in a best and final offer, since an offeror should not anticipate a further opportunity to revise its proposal after it makes its "best and final" submission. (citation omitted)... Contrary to Conrac's position, the Navy was under no obligation to discuss the various exceptions taken to the RFP's standard provisions, and the firm was properly excluded from the procurement (citation omitted) ..." (emphasis added).

In a negotiated procurement, an agency could amend the RFP, and have discussions; but it is not obligated to do so. Id.; Labat, supra.

Here, the contemporaneous record shows that the BOP had no intention of amending the RFP. It reaffirmed tha[redacted]. AR 99. In any event, Dismas had, and has no right to require the BOP to take such action. Id. Thus, for purposes of determining whether Dismas is an interested party, any reliance on possible discussions to show an injury would be speculative and hypothetical. Lujan, supra. Such possible interest is inadequate to confer standing on Dismas.

This is not a case where Dismas has alleged that it was improperly deprived of discussions. Information Technology & Applications Corp. v. United States, 316 F.3d 1312 (Fed. Cir. 2003) (standing found where offeror had protested that it was entitled to discussions).

Therefore, if Dismas cannot establish that its current FPR conforms to the material minimum requirements, it effectively did not submit an offer and it is not an interested party to bring a protest. As shown below, Dismas cannot meet this burden.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

II. Dismas Offer is Materially Non-Conforming

Notwithstanding Dismas' misleading statements in its pleadings to this Court to imply that it had taken "no exceptions" to the RFP requirements and would have won the award based on its allegedly "superior proposal", Dismas cannot meet its burden of proving that its FPR complied with the minimum requirement in the RFP. The requirement that the offeror "shall" [redacted] which requirement is restated in "shall" terms throughout the RFP, and is the "earmark" of a minimum requirement. See Gentex Corp. v. United States, 58 Fed. Cl. 634, 650 (2003); accord International Resource Recovery Inc. v. United States, 60 Fed. Cl. 1 (2004).

Dismas' FPR [redacted] therefore was a material nonconformity, Cooperativa Maratori Riuniti-Anese, October 15, 2004, B-294747, 2004 CPD ¶210. The BOP, which could make award "solely on the factors specified" in the RFP, could not award to Dismas. 41 U.S.C. §253a(a)(1); Alfa Laval; supra; Labat, supra.

III. Dismas Is Not In Line for Award

Assuming for the sake of argument only that Dismas' protest was sustained and Bannum was either downgraded or eliminated from the competition, the only offeror that could have been awarded the contract based on these alleged errors in Dismas' protest was [redacted] met the [redacted] and was rated acceptable. AR 1319. While Dismas has carefully avoided mentioning [redacted] by name in its pleadings, Dismas has not challenged [redacted] ratings and indeed, would have no advantage over [redacted] in the T/M factor since its FPR was non-compliant and could only have been rated Red-Unacceptable. Dismas was not in line for award. IBM, supra.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

IV. The BOP's Inaction Does Not Confer Interested Party Status on Dismas

The fact that the BOP did not eliminate Dismas or downgrade Dismas' pre-FPR T/M rating to reflect its non-compliance does not make Dismas an interested party. The SSA was aware that Dismas had proposed [redacted] in its FPR that did not meet the BOP's [redacted] requirement. AR 1315. While the SSA took no action in terms of reconvening the TEP to change the pre-FPR ratings, and used those pre-FPR ratings in its SDD, there is no indication that the SSA considered Dismas' FPR compliant with the minimum requirements [redacted] On the contrary, the contemporaneous record shows that the BOP had no intention of amending the RFP to change [redacted]. AR 99.

In any event, there would be no legal basis for the BOP to conclude that Dismas' FPR was compliant and make award to Dismas. 41 U.S.C. §253b(a)(1); Alfa Laval; Cooperativa.

Galen Medical Associates, Inc. v. United States, 56 Fed. Cl. 104, aff'd 369 F.3d 1324 (Fed. Cir. 2004) is distinguishable. In that case, Galen had submitted a facility and alternate facility to meet Veterans Administration ("VA") patient capacity requirements. In its technical proposal, Galen had represented that it did, in fact, have sufficient capacity at its facility and also proposed an alternate facility. In evaluating that proposal, the VA technical evaluators did not fully accept these proposal claims and stated:

> "... the proposal does not document that [Galen] has the physical facilities or the staff that would be necessary to provide services under the contract." (emphasis added).

Galen Medical Associates, Inc., B-288661.4-.5, Feb. 25, 2002, 2002 CPD ¶44, Ex. C.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

On that basis, the VA found Galen's proposal acceptable but affirmatively downgraded Galen's technical score for the apparent lack of capacity. Id. However, when Galen protested to the GAO, in spite of this contemporaneous record, the GAO interpreted the above evaluators' statement as a VA conclusion that Galen was "technically unacceptable" and thus, found Galen was not an interested party. Id.

The Court correctly rejected this GAO's finding of technical unacceptability. Unlike Dismas, Galen affirmatively represented in its offer that it would comply with the requirements. However, given the apparent ambiguity between Galen's proposal promise and the ambiguous capacity statistics provided, the VA technical evaluators had grounds to find an increased risk of non-compliance and downgraded Galen's score. Ex. C.

That is why the Court highlighted the VA's action in twice finding its proposal acceptable and downgrading Galen rather than eliminating it. Galen, 56 Fed. Cl. at 108. There was no basis to conclude that the agency found Galen technically unacceptable.

Further, in this Court Galen had protested the ratings which were the basis on which the lack of standing as an interested party. Galen, 56 Fed. Cl. at p. 111. Had this protest been sustained on the merits, Galen would have had a right to discussions and a substantial chance to win the award. Cf. Information & Technology, supra.

In contrast here, Dismas cannot legitimately allege that its offer is compliant. There is no ambiguity. Dismas' FPR is noncompliant with a material requirement [redacted]. Nor does Dismas' protest allege that as a result of any BOP impropriety, it is entitled to an amendment to the RFP or discussions. It knows there is no basis for such claim. That is why it disingenuously implied it had taken no exceptions to the RFP.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

In any event, this Court cannot be forced to find that Dismas has met its burden to show it is an interested party and to entertain this case on the merits because the BOP failed to take action to properly evaluate Dismas' unequivocal material nonconformity. This Court has an obligation to enforce federal statutes which require the BOP to award only to those offers "based solely on those factors specified" in the RFP. 41 U.S.C. §253a(a)(1).

Based on the RFP and Dismas' express exception to a mandatory requirement, a remand to the TEP and BOP to properly evaluate its FPR is unnecessary in this case. Dismas was not a qualified offeror, cannot legitimately protest its current status and thus, has no standing to bring this protest.

CONCLUSION AND REQUEST TO AMEND BRIEFING SCHEDULE

Not every offeror is an interested party to protest in this Court under 28 U.S.C. §1491(b), only those with a direct economic interest. By Dismas' action of submitting a materially nonconforming FPR, Dismas was no longer in line for award. As a result, Dismas forfeited any right it had to protest under this Court's bid protest jurisdiction. Put another way, but for the errors alleged in this protest, Dismas would not have been awarded the contract and has no direct economic interest in the award. Bannum respectfully requests that its Motion to Dismiss be granted.

Bannum has been advised on December 15, 2006 that Defendant concurs in positions in this motion and will be filing a separate motion to dismiss.

Bannum also respectfully requests that this Court amend the current schedule to suspend further pleadings on the merits until the Court decides the motion to dismiss. There are substantial reasons for taking this action.

**AGREED UPON REDACTED COPYMAY BE MADE PUBLIC**

1. Defendant, Bannum and this Court would have to incur significant additional legal costs in defending this case when the protester is not an interested party.

2. Plaintiff's representations in its pleadings relating to its conformity with the specifications, its "superior proposal" and its status as an interested party, are intentionally incomplete and materially misleading. Such conduct forfeits any claim Dismas could have to a merits decision before [redacted] is resolved. Bannum will shortly be exposing Plaintiff's additional inaccurate and misleading representations in the pleadings on which Dismas' motion to supplement the record is based.

3. Plaintiff filed this action 118 days after the GAO denied its protest. If the Court were to deny the motion to dismiss and proceed to the merits, the additional delay will not affect the BOP's mission which will be accomplished by Bannum on February 1, 2007 or in any event, by [redacted].

For these reasons and those set forth above, Bannum respectfully requests that the Court amend the schedule to suspend merits filings and that after argument that the complaint should be dismissed.

Respectfully submitted,

s/ Michael A. Gordon
Counsel of Record for Bannum, Inc.
HOLMES & GORDON
17 West Jefferson Street
Rockville, Maryland 20850
(301) 340-1251 (telephone)
(301) 340-1253 (facsimile)

OF COUNSEL:
Fran Baskin, Esquire

**AGREED UPON REDACTED COPY MAY BE MADE PUBLIC**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Washington, D.C.
BID PROTEST

| | | |
|---|---|---|
| BANNUM, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Fed. Cl. No. |
| UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION OF JOHN D. RICH

1. I, John D. Rich, am and have been the President of Bannum, Inc. ("Bannum") at all relevant times. All of the statements herein are based on my personal knowledge or information gained from direct discussions with Bannum, former Keeton Corrections, Inc. (Keeton") and Federal Bureau of Prisons' ("BOP") employees. I wrote the letters to BOP [redacted] attest that they are accurate. I also submitted a declaration in the prior proceedings in this Court in No. 06-744-C.

2. In November 2006, I was contacted by [redacted], who formerly worked for [redacted] at its [redacted] facility. [redacted] told me that all of the inmates from Bannum's Orlando facility had been transferred there but that [redacted] did not have adequate space for these inmates. He said that when the transfers were made, he told the BOP that they did not have adequate space for the 60 inmates that were transferred and that the facility was only properly rated to house up to 20 inmates. As a result, many inmates had to be given weekend passes which allowed them to go for up to

**AGREED UPON REDACTED COPY MAY BE MADE PUBLIC**

3 days to some address that the contractor visits and approves. [redacted] said this transfer sent the facility into chaos and they had inadequate staff to handle the transfer. Since there no space after the 3-day period passed, the BOP Community Corrections Manager advised him to keep renewing the 3-day passes in violation of Community Corrections Center regulations and the contract. The overflow inmates apparently had to be sent elsewhere.

3. In my and Bannum's experience, [redacted]

5. [redacted]

**AGREED UPON REDACTED**
**COPY MAY BE MADE PUBLIC**

6. I believe our January 26, 2007 submission contained sufficient information to proceed with discussions and was not deficient. [redacted] we were not warned that we would be deficient [redacted]. Even if we had been warned, the BOP did not provide a reasonable time to obtain them. I informed the BOP of the unreasonable amount of time being provided in several communications to them but my protests were ignored.

7. Unless injunctive relief is granted, I believe the contract will be awarded to Dismas [redacted] within the unreasonably short times allowed by the BOP. If Dismas retains this award, Bannum will lose substantial anticipated profits, and its ability to rehire any key personnel still available who were to be assigned to work on this Contract will be impaired.

8. Further, [redacted] and [redacted]. Unless something is done to prevent BOP personnel from taking retaliatory actions against Bannum, Bannum's future opportunities [redacted] will continue to be severely damaged.

**AGREED UPON REDACTED COPY MAY BE MADE PUBLIC**

9. I strongly believe that Bannum was not treated fairly in this procurement and in the "remedial action" taken by the BOP and that these actions were not in accordance with government contract law.

I swear under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

John D. Rich
President, Bannum,. Inc.

February 14, 2007